IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

**KENITA MCKENZIE**                                                                **PLAINTIFF**

v.                            Case No. 6:24-CV-_____

**NATIONAL PARK COLLEGE**                                                 **DEFENDANT**

## ORIGINAL COMPLAINT

COMES NOW Kenita McKenzie, by and through her attorney Chris Burks of WH LAW, for her Complaint against National Park College, she does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. This is an employment discrimination case brought by Plaintiff Kenita McKenzie under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615, for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's retaliation against Plaintiff after her use of protected leave.

2. When Plaintiff returned from FMLA leave, Defendant abruptly removed most of the job duties Plaintiff had previously performed, moved her to a smaller office, and changed her job title. Defendant violated the FMLA by failing to return Plaintiff to a position that was equivalent in employment terms and conditions.

3. The terms and conditions of Plaintiff's employment changed so drastically that it resulted in Plaintiff's constructive termination from employment on March 25, 2024. After Plaintiff's constructive termination, Defendant advertised her vacant position, which again included all the job duties that it had removed from Plaintiff upon her return from FMLA leave.

## II.  JURISDICTION AND VENUE

4. The United States District Court for the Western District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under FMLA.

5. The acts complained of herein were committed and had their principal effect within the Hot Springs Division of the Western District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

6. Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

7. The witnesses to violations alleged in this Complaint reside in this District.

## III. THE PARTIES

8. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

9. Plaintiff is a resident and citizen of Garland County.

10. Plaintiff was hired by Defendant in August 2022. She was constructively terminated on March 25, 2024.

11. At all material times, Plaintiff has been entitled to the rights, protection, and benefits provided under the FMLA.

12. Defendant is a public community college located in Hot Springs, Arkansas.

13. Defendant can be served via its President, Wade Derden, at 101 College Dr., Hot Springs National Park, AR 71913.

14. Defendant is an "employer" within the meanings set forth in the FMLA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

15. Plaintiff worked in excess of 1,250 hours during the years 2022 and 2023.

16. Defendant employed fifty (50) or more employees for each working day during each of twenty or more calendar workweeks in the year of the wrongful acts.

17. The employees were located at Defendant's Hot Springs National Park campus or within seventy-five miles thereof.

## IV. FACTUAL ALLEGATIONS

18. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

19. Plaintiff was hired by Defendant as the Veteran Services Coordinator/Academic Advisor in August 2022. Plaintiff's primary job duties involved providing services to veteran students, ensuring Defendant was in compliance with VA regulations and standards, and serving as the School Certifying Official for military veterans and dependent students.

20. Plaintiff performed very well in her position. She received an excellent evaluation and ensured Defendant's program was in compliance with federal VA standards so they could continue to receive VA funds.

21. Plaintiff was originally supervised by John Tucker, the Dean of Students.

22. In late 2023, Plaintiff reported to Tucker that a female veteran student complained about an older male in the Veterans Service Center sexually harassing her. Plaintiff had knowledge that the older male was not a student at NPC, but a member of the community who visited the

Veterans Service Center to use public computers. Plaintiff pointed out that the Center was created and intended for veterans who were students at NPC, which this older male was not.

23. Tucker agreed that Plaintiff was correct about the intended purpose of the Center and told her he would handle the situation.

24. Plaintiff saw the older male in the center again, and she referred him to the public library because he was not a current student at NPC.

25. The male became extremely irate, yelled at Plaintiff, and lunged at her in a threatening manner. He demanded to speak to her supervisor.

26. Tucker spoke with the male and Plaintiff understood that he asked the male not to return to the Center as it was intended for current NPC students.

27. A coworker later told Plaintiff that the male continued to visit the center in the evenings after Plaintiff had left work to use the computers.

28. In November 2023, Plaintiff worked late. As she left her workplace, she saw the older male in the Center. She referred him to the public library again. The male responded that Tucker had told him that he could continue to use the center as long as he waited until Plaintiff had left.

29. Plaintiff reported this to Tucker, Vice President of Student Affairs, and Defendant's security because she was concerned for her safety and the safety of veteran students, as a female veteran student had complained that this male had sexually harassed her. They took no action to address Plaintiff's concerns, and the male non-student continued to visit the NPC campus to use the Veterans Center resources.

30. Instead, soon after Plaintiff's report, she was reassigned to a new supervisor, Stephanie Rizzo. Plaintiff was also assigned additional job duties that included acting as an Academic Advisor to the NPC students that Tucker had previously advised.

31. In January 2024, Plaintiff's parents suffered heart attacks approximately a week apart. Plaintiff requested and received approval to use FMLA leave to care for her parents while they were recovering, which included assisting them with daily life activities and transporting them to and from doctor's appointments.

32. Prior to leaving on her approved FMLA time, Plaintiff created a set of standard operating procedures ("SOP") for Defendant to use as a go-by for her position while she was out of the office. Plaintiff provided these to her supervisor, Rizzo, to ensure Plaintiff's job duties could be covered while she was out on leave caring for her parents.

33. Plaintiff returned to work on March 5, 2024, when her eight-week FMLA leave ended. Plaintiff scheduled a meeting with Rizzo so they could discuss what went on while Plaintiff was out.

34. Upon her return, Rizzo and Defendant's Human Resources representative met with Plaintiff and told her that all her job duties related to veteran students, which constituted the majority of Plaintiff's position, were being removed from her and reassigned to Rizzo.

35. When Plaintiff asked Rizzo if she had any experience working as a Veteran Services Coordinator, as Plaintiff had, Rizzo said that she did not and that she was relying on the SOP Plaintiff had created prior to her FMLA leave.

36. Plaintiff was moved from her former office to a smaller office.

37. Defendant's Human Resources department presented Plaintiff with a job description that removed all of her veteran-related duties, and left only her duties as an Academic Advisor. Defendant changed Plaintiff's job title from Veterans Services Coordinator/Academic Advisor to Academic Advisor.

38. When Plaintiff asked for additional time to review these changes prior to signing and accepting the new job description, Defendant told her that her job title and her job duties would be changed whether she signed off on it or not.

39. Plaintiff had no performance issues prior to her FMLA leave. Plaintiff had received an excellent evaluation. When she asked Defendant if her job duties were removed due to performance issues, they told her that she had done a great job and that her performance was not the reason her job duties were removed.

40. As a result of Defendant's drastically altering Plaintiff's job duties, title, and office after her return from FMLA leave, and the relationship between Plaintiff and her supervisors deteriorating, Plaintiff was unable to continue in her position.

41. Plaintiff was constructively terminated on March 25, 2024.

42. After Plaintiff's constructive termination, Defendant advertised a Veterans Service Coordinator/Academic Advisor position. This listing included all the job duties that Plaintiff had performed prior to her FMLA leave, which were reassigned to Stephanie Rizzo upon Plaintiff's return.

### V.   FIRST CLAIM FOR RELIEF
#### (Claims for Violation of FMLA)

43. Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

44. Plaintiff was employed by the Defendant continuously from August 2022 until her constructive termination on March 25, 2024.

45. Plaintiff requested and was approved for FMLA leave to care for her parents after they suffered heart attacks.

46. Plaintiff returned from FMLA leave on March 5, 2024.

47. Immediately upon her return, Plaintiff was told most of her previous job duties were being removed from her and reassigned to another employee who did not have any experience in working with veteran students. This employee was performing Plaintiff's job duties using a manual Plaintiff created prior to leaving on FMLA. Plaintiff's job title was changed and she was moved to a smaller office.

48. Plaintiff had no written warnings or write-ups regarding her performance in the Veteran Services Coordinator/Academic Advisor position, nor was she on a performance improvement plan.

49. When Plaintiff asked for additional time to review the changes to her position, Defendant told her that her title and job duties would be changed whether she signed off on the change or not.

50. As a result of Defendant's drastically altering Plaintiff's job duties, title, and office after her return from FMLA leave, and the relationship between Plaintiff and her supervisors deteriorating, Plaintiff was unable to continue in her position.

51. Plaintiff was constructively terminated on March 25, 2024, as a result of Defendant's retaliation against her after her use of FMLA leave.

52. Defendant did not return Plaintiff to a position that was equivalent in employment terms and conditions upon her return from FMLA leave. Instead, Defendant effectively demoted Plaintiff to a lesser position, removed all her job duties and assigned them to a less-experienced employee, and moved Plaintiff to a smaller office.

53. As a result of Defendant's violation of FMLA, Plaintiff has suffered damages including, but not limited to, lost wages and salary, benefits, interest, pain and suffering, and attorney's fees and costs.

54. Pursuant to 29 U.S.C. § 2617(1)(A)(iii), Plaintiff is entitled to and she seeks an additional amount as liquidated damages equal to the sum of her lost wages or salary, benefits, or other compensation denied or lost to her by reason of Defendant's violations of FMLA, plus any interest she is entitled to for these causes, because Defendant's violations were not in good faith and Defendant had no reasonable grounds for believing that its actions were not in violation of §2615 of FMLA.

## VI. PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Kenita McKenzie respectfully prays that Defendant be summoned to appear and to answer herein as follows: for the entry of a declaratory judgment in favor of Plaintiff, decreeing that her federally protected rights have been violated; that this Court enter judgment in her favor and against Defendant, for an amount in excess of $75,000.00, plus interest and liquidated damages as that term is defined in 29 U.S.C. § 2617 and for other relief as this Court deems appropriate, including an appropriate award of front pay.

Respectfully submitted,

**Kenita McKenzie, PLAINTIFF**

                    wh Law
                    North Little Rock Office
                    501.888.4357

By:     Chris Burks (ABN: 2010207)
         chris@wh.law

         Mailing Address:
         1 Riverfront Place, Suite 745
         North Little Rock, AR 72114